Sonia S. Waisman, Esq., State Bar No. 153030
McCLOSKEY, WARING, WAISMAN & DRURY LLP
1960 East Grand Avenue, Suite 580
El Segundo, CA  90245
Telephone No.: (310) 524-0400
Facsimile No.:  (310) 524-0404
swaisman@mwwdlaw.com

Attorneys for Plaintiffs The Standard Fire Insurance Company and
Travelers Casualty and Surety Company

William J. Baron, Esq., State Bar No. 111288
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone No.:  (415) 957-3000
Facsimile No.:   (415) 957-3001
wjbaron@duanemorris.com

Attorneys for Plaintiff
Great American Insurance Company of New York, formerly
known as American National Fire Insurance Company

John Conway, Esq., State Bar No. 179301
AIWASIAN & ASSOCIATES
725 S. Figueroa Street, Suite 1050
Los Angeles, CA 90017
Telephone No.: (213) 233-9650
Facsimile No.:  (213) 233-9651
john.conway@mclolaw.com

Attorneys for Plaintiffs
Vigilant Insurance Company, Century Indemnity Company (as successor to
CCI Insurance Company, as successor to Insurance Company of North America),
Pacific Employers Insurance Company, and Federal Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY; GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, formerly known as American National Fire Insurance Company; VIGILANT INSURANCE COMPANY; and CENTURY INDEMNITY | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

COMPANY, as successor to CCI
Insurance Company, as successor to
Insurance Company of North America,
PACIFIC EMPLOYERS
INSURANCE COMPANY, and
FEDERAL INSURANCE COMPANY

Plaintiffs,

v.

ESTATE OF BETTY GOLDBERG,
DECEASED and ESTATE OF
AL GOLDBERG, DECEASED, by
and through their successor-in-interest,
Daniel Rubin; 220 W. GUTIERREZ,
LLC, a California limited liability
company,

Defendants.

Plaintiffs THE STANDARD FIRE INSURANCE COMPANY ("Standard

Fire"), TRAVELERS CASUALTY AND SURETY COMPANY ("Travelers"),

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, formerly

known as American National Fire Insurance Company ("Great American"),

VIGILANT INSURANCE COMPANY ("Vigilant"), CENTURY INDEMNITY

COMPANY (as successor to CCI Insurance Company, as successor to Insurance

Company of North America) ("Century"), PACIFIC EMPLOYERS INSURANCE

COMPANY ("PEIC"), and FEDERAL INSURANCE COMPANY ("Federal")

(collectively "Plaintiffs," "Plaintiff Insurers" or "Insurers"), allege as follows:

## INTRODUCTION

1.      This is an action for declaratory relief, in which the Plaintiffs seek an

adjudication of their rights and obligations (if any) with respect to claims for

insurance benefits arising or potentially arising from (i) an underlying lawsuit

pending in this Court, entitled *Estate of Betty Goldberg, Deceased, et al. v. Goss-*

*Jewett Company, Inc., et al.*, Case No. 5:14-cv-01872-DSF (AFM) (the "Underlying

Federal Action"), and (ii) an underlying state court lawsuit entitled

cm

1  *220 W. Gutierrez, LLC v. Goss-Jewett & Co., Inc., et al.*, Santa Barbara County

2  Superior Court, Anacapa Division, Case No. 17cv05689 (the "Underlying State

3  Action"). The Defendants in this action are plaintiffs in the Underlying Federal

4  Action or the Underlying State Action, and have claimed to be entitled to recover

5  insurance benefits for claims asserted in those actions under policies issued by the

6  Plaintiffs.

7        2.      The named insured under the Plaintiff Insurers' policies is a defunct

8  corporation. All or most of the policyholders under the Insurers' policies are

9  deceased. The nominal "claimants" are deceased. Plaintiff insurers are informed

10  and believe, and thereupon allege, that the Underlying Federal Action and the

11  Underlying State Action are part of a plan by lawyers from a Santa Barbara law firm

12  to acquire a valuable Santa Barbara property at no cost. Those lawyers formed a

13  limited liability company that acquired contaminated real estate from a deceased

14  former owner's estate for zero payment. The lawyers then filed underlying

15  litigation in the name of the deceased former owners' estates, against a defunct

16  former tenant at the property, and against deceased and living former officers of that

17  tenant. In that litigation, the lawyers wrongly asserted that the estates had incurred

18  costs to address contamination at the property, and thus claimed recovery for costs

19  of remediating contamination there. In short, the lawyers manufactured the

20  Underlying Lawsuits to generate claims against insurers of the defunct former

21  tenant, in an effort to require the Insurers to pay to clean up the property – despite

22  the terms, conditions, and exclusions of the Insurers' policies – as part of a plan to

23  acquire a valuable property without having paid for the property or incurring any

24  costs for its cleanup.

25                                **JURISDICTION**

26        3.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 based on

27  diversity of citizenship, as set forth below, because this dispute is between citizens

28  / / /

1    of different states and the amount in controversy exceeds the sum or value of

2    $75,000, exclusive of interest and costs.

3                                             **PARTIES**

4        4.     Plaintiff STANDARD FIRE is, and at all relevant times was, a

5    corporation organized under the laws of the State of Connecticut, with its principal

6    place of business in Hartford, Connecticut, and at all relevant times was authorized

7    to transact business within the State of California.

8        5.     Plaintiff TRAVELERS, formerly known as The Aetna Casualty and

9    Surety Company, is a corporation organized and existing under the laws of

10    Connecticut and maintains its principal place of business in Hartford, Connecticut,

11    and was and is at all relevant times authorized to transact business within the State

12    of California.

13        6.     Plaintiff GREAT AMERICAN is, and at all relevant times was, a

14    corporation organized under the laws of the State of New York, with its principal

15    place of business in Cincinnati, Ohio, and at all relevant times was authorized to

16    transact business within the State of California.

17        7.     Plaintiff VIGILANT is, and at all relevant times was, a corporation

18    organized under the laws of the State of New York, with its principal place of

19    business in New Jersey, and at all relevant times was authorized to transact business

20    within the State of California.

21        8.     Plaintiff CENTURY is, and at all relevant times was, a corporation

22    organized under the laws of the State of Pennsylvania, with its principal place of

23    business in Philadelphia, Pennsylvania, and at all relevant times was authorized to

24    transact business within the State of California.

25        9.     Plaintiff PEIC is, and at all times relevant times was, a corporation

26    organized under the laws of the State of Pennsylvania, with its principal place of

27    / / /

28    / / /

1   business in Philadelphia, Pennsylvania, and at all relevant times was authorized to

2   transact business within the State of California.

3       10.     Plaintiff FEDERAL is, and at all times relevant times was, a

4   corporation organized under the laws of the State of Indiana, with its principal place

5   of business in New Jersey, and at all relevant times was authorized to transact

6   business within the State of California.

7       11.     Before their deaths, Betty Goldberg and Al Goldberg owned property

8   located at 220 W. Gutierrez Street in Santa Barbara, California (the "Property"),

9   which is the subject of the Underlying Federal Action and the Underlying State

10  Action (collectively, the "Underlying Lawsuits").  The operative complaint in the

11  Underlying Federal Action identifies the plaintiffs in that case as the "ESTATE OF

12  BETTY GOLDBERG, DECEASED and ESTATE OF AL GOLDBERG,

13  DECEASED, by and through their successor-in-interest, Daniel Rubin," and it

14  alleges that the defendants in that case, and/or their predecessors-in-interest, are

15  responsible for environmental contamination at, under and/or allegedly emanating

16  from the Property (the "Alleged Contamination").  A copy of the current operative

17  complaint in the Underlying Federal Action is attached hereto as Exhibit A.

18      12.     The defendants in this case include the ESTATE OF BETTY

19  GOLDBERG, DECEASED and the ESTATE OF AL GOLDBERG, DECEASED,

20  by and through their successor-in-interest, Daniel Rubin (collectively, the "Goldberg

21  Estates").

22      13.     Although the plaintiffs in the Underlying Federal Action have never

23  established that the ESTATE OF AL GOLDBERG was ever actually formed, their

24  operative complaint therein alleges that the ESTATE OF AL GOLDBERG,

25  DECEASED is a plaintiff in that case.  Accordingly, the ESTATE OF

26  AL GOLDBERG, DECEASED is named as a defendant in this action, to the extent

27  any such estate exists.

28  / / /

1    14.    Defendant 220 W. GUTIERREZ, LLC (the "Gutierrez LLC") is a

2  Delaware limited liability company and currently owns the Property.  A copy of the

3  current operative complaint filed by the Gutierrez LLC in the Underlying State

4  Action is attached hereto as Exhibit B.

5                                        **VENUE**

6    15.    Venue is proper in the Central District of California, pursuant to

7  28 U.S.C. § 1391(a)(2), because the Property is located within the Central District,

8  and because a substantial part of the events that are the subject of this action

9  occurred within the Central District, including the Underlying Federal Action

10  pending in this District and the Underlying State Action pending in Santa Barbara

11  County Superior Court.

12                            **NATURE OF THE ACTION**

13    16.    This is a civil action for declaratory judgment under the Declaratory

14  Judgment Act, 28 U.S.C. § 2201.

15    17.    This action is brought to determine the respective rights and obligations

16  of each of the Plaintiffs under liability insurance policies issued by each of them to

17  Goss-Jewett & Co., Inc. ("Goss-Jewett") or Goss-Jewett's alleged predecessor, Tri-

18  County Sales, Inc. ("Tri-County"), with respect to claims for insurance benefits,

19  including indemnity, in connection with the Underlying Lawsuits and investigation

20  and remediation of the Alleged Contamination.

21    18.    Plaintiffs are informed and believe, and thereupon allege, that the

22  Underlying Lawsuits are part of an effort by the members of the Gutierrez LLC to

23  acquire a valuable Santa Barbara property at no cost to the Gutierrez LLC or its

24  members.  Specifically, the Gutierrez LLC acquired the Property from the defendant

25  estates for no cost (the same estates its members represent in the Underlying Federal

26  Action), leveraging the estates' successor's fear of an environmental cleanup

27  obligation by purporting to take on such obligation.

28  / / /

19. The Gutierrez LLC and its members generated the Underlying Lawsuits against a defunct former tenant, deceased former officers of that tenant, and living former officers of that tenant, in an effort to construct the appearance of coverage obligations for insurers of the former tenant, despite the terms, conditions, and exclusions of the liability policies described herein, which do not cover the pollution liability at the Property. The members of the Gutierrez LLC "represent" the estates and their successor in the Underlying Federal Action, and the Gutierrez LLC purports to have obtained an "assignment" of rights from the estates and their successor. The Underlying Lawsuits allege substantially the same facts against, and same relief from, substantially the same defendants in different jurisdictions.

20. Plaintiff Insurers herein are informed and believe, and thereupon allege, that by filing multiple suits against a defunct corporation and its deceased and living former officers, the Gutierrez LLC seeks to require the Insurers to pay (under policies that do not cover the pollution liability) cleanup obligations that the Gutierrez LLC has assumed, so that the Gutierrez LLC will ultimately own a valuable property without having incurred any cost for the property and/or its cleanup.

21. Defendants assert that Plaintiffs each have a duty to defend Goss-Jewett and others, and/or have a duty to indemnify, with respect to claims alleged in the Underlying Lawsuits. On information and belief, Defendants further assert that Plaintiffs are obligated to pay expenses Defendants allegedly have incurred and/or will incur to investigate and remediate the Alleged Contamination.

22. Contrary to Defendants' contentions: (1) the costs to investigate the Alleged Contamination are not costs that any of the Plaintiff Insurers are obligated to pay under the insurance policies at issue; and (2) various policy conditions and exclusions, including pollution exclusions, apply to preclude coverage and negate any duty of the Plaintiff Insurers, or any of them, to pay indemnity with respect to

/ / /

/ / /

1  claims asserted by Defendants herein in their capacity as plaintiffs in the Underlying

2  Lawsuits.

3       23.    Accordingly, an actual and justiciable controversy exists concerning the

4  respective rights and obligations of each of the Plaintiff Insurers on the one hand,

5  and each of the Defendants, on the other hand, as to the Underlying Lawsuits and as

6  to the costs of investigating and/or remediating the Alleged Contamination.

7       24.    This action is brought in accordance with California Probate Code

8  § 553, in response to the Underlying Lawsuits filed by Defendants pursuant to

9  Probate Code §§ 550 through 555 for the purpose of seeking insurance proceeds

10  under Plaintiffs' respective policies.

11                        **GENERAL ALLEGATIONS**

12       A.    **History of the Property Ownership and Operations**

13       25.    The Goldbergs acquired the Property in the 1960s.  They operated a

14  dry cleaning supply business at the Property under the name Tri-County Sales.  The

15  Goldbergs later sold their interest in Tri-County but retained ownership of the

16  Property.  In 1991, the Goldbergs transferred the Property to the Al Goldberg and

17  Betty Goldberg Revocable Trust utd 1/2/91 (the "Goldberg Trust"), which owned

18  the Property until 1996, when the trust transferred the Property back to Betty

19  Goldberg.  Al Goldberg passed away in 1994.  Betty Goldberg passed away in 2003.

20       26.    In 2016, Daniel Rubin, the Goldbergs' grandson, as administrator of the

21  Estate of Betty Goldberg, transferred ownership of the property to the current

22  owner, the Gutierrez LLC, which is comprised of lawyers representing Defendants

23  and the Goldberg Trust.

24       27.    In the 1960s, while the Goldbergs owned the business, Tri-County sold

25  dry cleaning supplies, including PCE, at the Property.  The Goldbergs sold

26  Tri-County in 1968 to Donald George, who continued to own and operate the

27  business at the Property until he sold it to his brother, Terrence George, in

28  approximately 1974 or 1975.  Terrence George passed away in 1980, after which

1   Tri-County was sold to and merged into Goss-Jewett, which allegedly continued to
2   operate the dry cleaning supply business at the Property until 1991.

3       28.   On information and belief, before 1969 the Goldbergs reportedly stored
4   PCE on the Property in 55-gallon drums.  On information and belief, beginning in
5   1969, PCE reportedly was delivered to the Property by tanker truck and stored in an
6   above-ground storage tank at the Property.  At some later point, a second storage
7   tank allegedly was installed.

8       **B.    The Underlying Lawsuits**
9              ***The Underlying Federal Action***

10      29.   In 2013, the Goldberg Trust and the Gutierrez LLC entered into a
11  purchase and sale agreement to transfer the Property to the Gutierrez LLC.  In 2014,
12  the Underlying Federal Action was filed in the name of the Goldberg Estates.  In or
13  about July 2016, the Gutierrez LLC became the owner of the Property.  The
14  Gutierrez LLC's sole members are Bret Stone and John Till, both of whom also are
15  partners of the Paladin Law Group, which represents the Goldberg Estates in the
16  Underlying Federal Action.  In the complaint, the Goldberg Estates alleged that the
17  defendants therein are responsible for environmental contamination associated with
18  the Property.  The defendants in the Underlying Federal Action include (i) Goss-
19  Jewett, (ii) individuals who allegedly were past officers, directors and/or
20  shareholders of Goss-Jewett, and/or (iii) the estates of deceased individuals who
21  allegedly were past officers, directors and/or shareholders of Goss-Jewett (the
22  "Underlying Estate Defendants").  The Underlying Federal Action is pending and
23  remains active.

24      30.   Goss-Jewett is a suspended corporation.  As such, it lacks capacity to
25  defend itself in litigation under California law.  Accordingly, Plaintiff Insurers Great
26  American, Standard Fire, Vigilant, and Century ("Insurer Intervenors"), all of whom
27  issued primary policies to Goss-Jewett, intervened in the Underlying Federal Action
28  to defend the claims asserted against Goss-Jewett, subject to the Insurers' respective

1   reservations of rights, including their right to disclaim the existence of insurance
2   coverage for the claims asserted in the Underlying Federal Action.

3       31.    In the Underlying Federal Action, the Goldberg Estates sued the
4   Underlying Estate Defendants "to the extent of [the] estate's assets ... pursuant to
5   California Probate Code §§ 550 through 555 to establish the decedent's liability for
6   which he was protected by liability insurance policies." (ECF No. 1, Complaint,
7   ¶¶ 11, 12.) Various insurance companies, including but not limited to the Insurer
8   Intervenors, are defending claims asserted against the Underlying Estate Defendants
9   in the Underlying Federal Action, subject to the defending insurers' respective
10  reservations of rights, including their right to disclaim the existence of insurance
11  coverage for the claims asserted in the Underlying Federal Action.

12      32.    In the Underlying Federal Action, the plaintiff Goldberg Estates
13  asserted causes of action nearly identical to those the Goldbergs asserted in a prior
14  federal lawsuit, which was dismissed for lack of prosecution. Certain defendants
15  and the Insurer Intervenors in the Underlying Federal Action moved to dismiss
16  various claims therein based upon the adjudication of the prior federal lawsuit and
17  laches, resulting in the dismissal of the causes of action for waste, breach of lease,
18  negligence, nuisance, trespass, RCRA abatement claims, ultrahazardous activity and
19  UCL claims.

20      33.    The defendants in the Underlying Federal Action and Insurer
21  Intervenors therein later moved for summary judgment on the remaining causes of
22  action. In 2016, the District Court granted summary judgment in favor of the
23  moving parties.

24      34.    On appeal, the Ninth Circuit affirmed the District Court's dismissal of
25  certain causes of action, but reversed the dismissal of the Goldberg Estates' claims
26  for public nuisance and their claims under RCRA, CERCLA, and the California
27  Hazardous Substance Act. Those claims were remanded to the District Court.
28  / / /

COMPLAINT FOR DECLARATORY RELIEF

35.     On remand, the parties in the Underlying Federal Action have pursued discovery related to the reinstated claims; and by Order dated April 4, 2019, the Gutierrez LLC was added as a third-party defendant.  A trial date has not yet been set.

36.     By Order dated November 18, 2019, the Court in the Underlying Federal Action granted the Insurer Intervenors' renewed motion for summary judgment with respect to the RCRA claim, the claim for public nuisance injunction, and "for any claims that purport to be held by the 'Estate of Al Goldberg'" – an entity which the Court recognized had never existed.

37.     After the appeal and remand in the Underlying Federal Action, the Insurers sought to amend the answer of the Underlying Estate Defendants to raise insurance coverage issues, pursuant to California Probate Code §§ 550-555.  In its January 16, 2019 Order denying the motion for leave to amend, the District Court noted that "Probate Code § 553 explicitly provides that [coverage] defenses can be brought either in the case under § 550 or in a separate coverage case."  (Case No. 5:14-cv-01872-DSF-AFM, ECF No. 524, page 2.)  By this declaratory relief action, Plaintiffs seek to adjudicate coverage issues and defenses in this separate coverage case.  Accordingly, a justiciable controversy exists and the Plaintiffs are entitled to an adjudication of coverage issues and defenses under Probate Code section 553 as well as 28 U.S.C. § 2201.

38.     Moreover, if the Goldberg Estates were to obtain any judgment against Goss-Jewett and/or Underlying Estate Defendants in the Underlying Federal Action, the Goldberg Estates would then be judgment creditors who might seek to pursue claims for insurance coverage from Plaintiffs under California Insurance Code § 11580 (subject to all policy terms, exclusions, conditions, and limitations and subject to defenses arising under California law).  Accordingly, a justiciable controversy exists and the Plaintiffs are entitled to an adjudication of coverage issues and defenses on this basis as well.

39.     Subject to their respective complete reservations of rights, in the Underlying Federal Action the Intervenor Insurers (Great American, Standard Fire, Vigilant, and Century) have each intervened on behalf of the suspended Goss-Jewett corporation, and Plaintiff Insurers Great American, Standard Fire, Vigilant, Century, and PEIC are each participating in the defense of (i) certain of the Underlying Estate Defendants, pursuant to California Probate Code §§ 550 through 555, and (ii) one or more living former officers and/or directors of Goss-Jewett and/or Tri-County who are also defendants in the Underlying Federal Action.  Such defense is being provided, pursuant to reservations of rights, under insurance policies issued more than thirty years ago.

### *The Underlying State Action*

40.     In December 2017, the Gutierrez LLC brought the Underlying State Action in Santa Barbara County.  The Gutierrez LLC, as the current owner of the Property, has sued defendants therein and/or their predecessors-in-interest, seeking recovery for the Alleged Contamination, asserting causes of action for (1) public nuisance; (2) private nuisance; (3) trespass; (4) negligence; (5) ultrahazardous activity; (6) statutory indemnity; and (7) declaratory relief.  (See Exhibit B hereto). The Gutierrez LLC filed the Underlying State Action against the same parties that the Goldberg Estates sued in the Underlying Federal Action, seeking the same recovery from the Plaintiff Insurers pursuant to Probate Code §§ 550 through 555, but asserting state and common law causes of action as the bases for its claims.

41.     Defendants therein moved to abate the Underlying State Action in favor of the ongoing Underlying Federal Action; that motion was denied.

42.     Defendants in the Underlying State Action and the Insurers, as intervenors therein, successfully demurred to the Gutierrez LLC's fourth and fifth causes of action for negligence and ultrahazardous activity, respectively.  They also successfully moved to strike the Gutierrez LLC's claim for punitive damages and for attorneys' fees under Code of Civil Procedure § 1021.6.  The Gutierrez LLC was

1  given the opportunity but chose not to amend its complaint in the Underlying State
2  Action.

3      43.    The Gutierrez LLC brought a motion in the Underlying State Action
4  seeking summary judgment (later amended to a motion for summary adjudication)
5  and a permanent injunction.  By its motion, the Gutierrez LLC sought an order
6  establishing its nuisance and indemnification claims against Goss-Jewett, and an
7  injunction ordering Goss-Jewett to perform a Remedial Investigation and Feasibility
8  Study at the Property.  Additionally, the Gutierrez LLC filed a motion seeking an
9  order that its prospective purchaser agreement with the DTSC comprises a good
10  faith settlement under Civil Code § 877.6.  The Court denied the motions, including
11  the request for injunctive relief.

12      44.    Cross-complaints were filed, discovery was ongoing and a trial date of
13  March 11, 2020 had been set in the Underlying State Action.  However, by Order
14  dated November 21, 2019, the Court granted a renewed motion, filed by various
15  underlying defendants and the Insurer Intervenors, to stay the Underlying State
16  Court Action.  By that Order, the Court stayed all proceedings in that action and
17  vacated all hearing dates therein, to allow the related Underlying Federal Action to
18  conclude, and set the next Case Management Conference for June 17, 2020.

19      45.    In the Underlying State Action, the Gutierrez LLC asserts claims
20  against certain Underlying Estate Defendants under California Probate Code §§ 550
21  through 555, and served its complaint on certain of the Insurers, as insurers or
22  alleged insurers of certain Underlying Estate Defendants.  Probate Code § 553
23  provides that in such situations, the insurer is entitled to litigate coverage issues and
24  defenses either in the case brought under the Probate Code or in a separate coverage
25  case.  By this declaratory relief action, Plaintiffs seek to adjudicate coverage issues
26  and defenses in this separate coverage case.  Accordingly, a justiciable controversy
27  exists and the Plaintiffs are entitled to an adjudication of coverage issues and
28  defenses under Probate Code § 553 as well as 28 U.S.C. § 2201.

46.     Moreover, if the Gutierrez LLC were to obtain any judgment against Goss-Jewett and/or Underlying Estate Defendants in the Underlying State Action, the Goldberg Estates would then be judgment creditors who might seek to pursue claims for insurance coverage from Plaintiffs under California Insurance Code § 11580 (subject to all policy terms, exclusions, conditions, and limitations and subject to defenses arising under California law).  Accordingly, a justiciable controversy exists and the Plaintiffs are entitled to an adjudication of coverage issues and defenses on this basis as well.

47.     Subject to their respective complete reservations of rights, in the Underlying State Action the Intervenor Insurers (Great American, Standard Fire, Vigilant, and Century) have each intervened on behalf of the suspended Goss-Jewett corporation, and Plaintiff Insurers Great American, Standard Fire, Vigilant, Century, and PEIC are each participating in the defense of (i) certain of the Underlying Estate Defendants, pursuant to California Probate Code §§ 550 through 555, and (ii) one or more living former officers and/or directors of Goss-Jewett and/or Tri-County who are also defendants in the Underlying State Action.  Such defense is being provided, pursuant to reservations of rights, under insurance policies issued more than thirty years ago.

### C.   **Probate Code §§ 550 through 555**

48.     When an estate is sued pursuant to California Probate Code §§ 550 through 555, recovery is limited to damages covered by insurance.  (Cal. Prob. Code § 554.)  The summons may be served on the decedent's insurer; the "proceedings shall be in the name of the estate, but otherwise shall be conducted in the same manner as if the action were against the personal representative."  (Cal. Prob. Code § 552.)  "The insurer may deny or otherwise contest its liability in an action under [Probate Code §§ 550 through 555] or by an independent action."  (Cal. Prob. Code § 553.)  In other words, the insurer of an estate sued under these Probate Code sections may elect to litigate its coverage defenses in the lawsuit against the estate or

1   that lawsuit may address only issues related to the estate's liability and any

2   damages, leaving the insurance coverage issues for a separate action, such as the

3   present action.  Plaintiff Insurers are entitled to an adjudication of coverage issues

4   and defenses in this action.

5          **D.**    **The Insurance Policies**

6       ***The Primary Policies Under Which the Insurers Are Defending Goss-Jewett***

7       ***and the Underlying Estate Defendants in the Underlying Lawsuits***

8          49.    Certain decedents of the Underlying Estate Defendants (Robert W.

9   Schack and Benjamin F. Fohrman) were insureds under the following primary

10  general liability policies issued to Goss-Jewett & Co., Inc., as its executive officers,

11  but only while acting within the scope of their duties as such:

12         •    Vigilant policy number MP 5521 91 94 (11/1/82 to 11/1/83) (the

13             "Vigilant Policy");

14         •    Great American policy number BP 6-25-30-73-00 (11/1/83 to

15             11/1/84) (the "Great American Policy");

16         •    Standard Fire Insurance Company policy number 86 SM 887550

17             (11/1/84 to 11/1/85) (the "Standard Fire Policy"); and

18         •    Insurance Company of North America policy number

19             WDP D1 06 32 36 5 (11/1/85 to 11/1/86) (the "Century Policy").

20         50.    Subject to the terms, conditions, and exclusions in each of these

21  policies, they provide general liability coverage for sums the insured is legally

22  obligated to pay as damages because of property damage caused by an

23  "occurrence," but only if that damage takes place during the policy period.  The

24  Great American Policy and the Standard Fire Policy each defines "occurrence" to

25  mean "an accident, including continuous or repeated exposure to conditions, which

26  results in bodily injury or property damage neither expected nor intended from the

27  standpoint of the insured."

28  / / /

51.     The Vigilant Policy, the Great American Policy and the Standard Fire Policy each contain a pollution exclusion barring coverage for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.* (Emphasis added.)

52.     The Century Policy contains a similar "Pollutants and Contaminants" Exclusion, providing that Century "won't protect against claims for contamination or pollution of the land, atmosphere, or any body of water, including underground natural water," with an exception for "*claims based on a sudden and accidental discharge or release of pollutants, contaminants or irritants*."  (Emphasis added.)

53.     Thus, each of the policies discussed above (collectively, the "1982-86 Primary Policies") only provides coverage if and to the extent pollution damage due to sudden and accidental discharges resulted during its policy period.

*Other Liability Insurance Policies Issued to Goss-Jewett or Tri-County by Certain of the Insurers or Their Affiliates*

54.     During the period of the Great American Policy (11/1/83 to 11/1/84), Great American issued umbrella excess liability policy number PRO 6253058-00 ("Great American Umbrella Policy") to "Goss-Jewett and Co., Inc.," which is subject to substantially the same pollution exclusion as in the Great American Policy (though designated as Exclusion (g) in the umbrella policy).

55.     During the period of the Standard Fire Policy (11/1/84 to 11/1/85), Travelers, then known as The Aetna Casualty and Surety Company ("Aetna"), issued umbrella excess liability policy number 86 XS 344064 ("Aetna Umbrella Policy") to "Goss-Jewett and Co., Inc.," subject to substantially the same pollution

1   exclusion as in the Standard Fire Policy (though designated as Exclusion (d) in the

2   umbrella policy).

3      56.   During the period of the Vigilant Policy (11/1/82 to 11/1/83), Federal

4   issued excess policy 7961-07-38 ("Federal Excess Policy") to Goss-Jewett, which is

5   subject to substantially the same pollution exclusion as in the Vigilant Policy.

6      57.   During the period of the Century Policy (11/1/85 to 11/1/86), Century

7   issued excess liability policy XBC GO 600534 ("Century Excess Policy") to Goss-

8   Jewett, which includes, among other things, a pollution exclusion substantially

9   similar to the exclusions at issue herein.

10     58.   Thus, the Great American Umbrella Policy, Aetna Umbrella Policy,

11  Federal Excess Policy, and Century Excess Policy, like each of the 1982-86 Primary

12  Policies, only provide coverage if and to the extent pollution damage due to sudden

13  and accidental discharges resulted during their respective policy periods.  The 1982-

14  86 Primary Policies, the Great American Umbrella Policy, Aetna Umbrella Policy,

15  Federal Excess Policy, and Century Excess Policy are referenced collectively

16  hereinafter as the "Goss-Jewett Policies."

17     59.   For the periods from 6/25/78 to 6/25/79 and from 6/25/79 to 6/25/80,

18  PEIC issued primary liability insurance to Goss-Jewett's alleged predecessor, Tri-

19  County (the "PEIC Tri-County Policies").  The PEIC Tri-County Policies include,

20  among other things, the pollution exclusion recited in paragraph 51 above.

21     60.   For the periods 6/25/81 – 6/25/82, 6/25/82 – 6/25/83, and 6/25/83 –

22  11/1/83, Century issued primary liability insurance to Goss-Jewett's alleged

23  predecessor, Tri-County (the "Century Tri-County Policies").  The Century Tri-

24  County Policies include, among other things, pollution exclusions substantially

25  similar to the exclusions described above.  The PEIC Tri-County Policies and the

26  Century Tri-County Policies are referred to collectively herein as the "Tri-County

27  Policies."  The Tri-County Policies and the Goss-Jewett Policies are collectively

28  referred to herein as the "Policies."

COMPLAINT FOR DECLARATORY RELIEF

1   61.    Aetna also issued primary and excess general liability policies to Goss-
2   Jewett for the periods from 11/1/88 to 11/1/89 and from 11/1/89 to 11/1/90 ("Aetna
3   1988-90 Policies").  These policies each contain an absolute/total pollution
4   exclusion, which does not include the exception for "sudden and accidental"
5   releases, and, on information and belief, there is no dispute by any of the parties that
6   there is no defense or indemnity obligation under the Aetna 1988-90 Policies for any
7   of the claims at issue in this action or in either of the Underlying Lawsuits.  In the
8   event it is determined that any of the Defendants contend there is any obligation
9   under the Aetna 1988-90 Policies, or any of them, in connection with the claims at
10  issue in the Underlying Lawsuits, such that an actual controversy exists, leave to
11  amend this complaint will be sought to assert a claim for relief relative to such
12  policies.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – Against All Defendants)
### *(No Duty To Indemnify Based On The Pollution Exclusion)*

16  62.    Plaintiffs refer to and incorporate by reference Paragraphs 1 through
17  61, inclusive as though fully set forth herein.
18  63.    The Policies each include a pollution exclusion that applies to bar
19  coverage here because the Defendants have not met and cannot meet their burden of
20  proving that the "sudden and accidental" exception applies – *i.e.*, their burden of
21  identifying a particular release of pollutants that was both sudden and accidental and
22  proving that such release contributed substantially to causing the Alleged
23  Contamination during any of the Policies' policy period.
24  64.    The Defendants have not identified any particular sudden and
25  accidental release(s) of contaminants that contributed substantially to the Alleged
26  Contamination during any of the Policies' policy period.
27  65.    An actual and justiciable controversy exists between Plaintiffs and
28  Defendants as to whether Plaintiffs, or any of them, have a duty to indemnify with

COMPLAINT FOR DECLARATORY RELIEF

respect to the Underlying Lawsuits and the costs of investigating and/or remediating the Alleged Contamination, based on the pollution exclusions in the Policies; and upon determination that there is no duty to indemnify, any alleged duty to defend from that point forward is terminated.

66.     Plaintiffs, and each of them, seek a judicial determination as to the respective rights and obligations under their respective Policies.  In particular, Plaintiffs, and each of them, seek a judicial declaration that Plaintiffs, and each of them, have no duty to indemnify with respect to the Underlying Lawsuits and the costs of investigating and/or remediating the Alleged Contamination because the pollution exclusion in each of those Policies applies to negate a duty to indemnify and, upon such determination, any alleged duty to defend from that point forward is terminated.

67.     Such judicial declaration is necessary and appropriate at this time for Plaintiffs to ascertain their respective obligations, if any, owed under the Policies.

## SECOND CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT – Against All Defendants)

### (*No Duty To Indemnify--Other Policy Terms, Conditions And Limitations*)

68.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 67, inclusive as though fully set forth herein.

69.     An actual and justiciable controversy exists between Plaintiffs and Defendants as to whether policy terms, conditions and limitations, including, but not limited to, the Policies' insuring provisions, the policy period requirements, and the condition in certain of the Policies precluding coverage if any insured misrepresents or conceals material information in seeking coverage or making a claim, and policy exclusions other than the pollution exclusions, apply to limit or negate a duty to indemnify with respect to the Underlying Lawsuits and the costs of investigating and/or remediating the Alleged Contamination.

/ / /

70.     Plaintiffs, and each of them, seek a judicial determination as to their respective rights and obligations under their respective Policies.  In particular, Plaintiffs, and each of them, seek a judicial declaration that Plaintiffs, and each of them, have no duty to indemnify with respect to the Underlying Lawsuits and the costs of investigating and/or remediating the Alleged Contamination because policy terms, conditions and limitations, including, but not limited to, the Policies' insuring provisions, the policy period requirements, and the condition in certain of the Policies precluding coverage if any insured misrepresents or conceals material information in seeking coverage or making a claim, and policy exclusions other than the pollution exclusions, apply to negate a duty to indemnify and, upon such determination, any alleged duty to defend from that point forward is terminated.

71.     Such judicial declaration is necessary and appropriate at this time for Plaintiffs to ascertain their respective obligations, if any, owed under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for judgment as follows:

1.     On the First Claim for Relief, Plaintiffs, and each of them, seek a judicial declaration that Plaintiffs, and each of them, have no duty to indemnify with respect to the Underlying Lawsuits and the costs of investigating and/or remediating environmental contamination at, under and/or allegedly emanating from the Property because the pollution exclusion in the Plaintiffs' respective Policies applies to negate a duty to indemnify and, upon such determination, any alleged duty to defend from that point forward is terminated;

2.     On the Second Claim for Relief, Plaintiffs, and each of them, seek a judicial declaration that Plaintiffs, and each of them, have no duty to indemnify with respect to the Underlying Lawsuits and the costs of investigating and/or remediating environmental contamination at, under and/or allegedly emanating from the Property because policy terms, conditions and limitations, including, but not limited to, the Policies' insuring provisions, the policy period requirements, and the

1   condition in certain of the Policies precluding coverage if any insured misrepresents

2   or conceals material information in seeking coverage or making a claim, and policy

3   exclusions other than the pollution exclusions, apply to negate a duty to indemnify

4   and, upon such determination, any alleged duty to defend from that point forward is

5   terminated;

6          3.      Ordering that Plaintiffs, and each of them, be awarded their respective

7   costs of suit, including reasonable attorneys' fees incurred herein; and

8          4.      Such other and further relief as the Court deems just and proper.

9

10  Dated:  December 30, 2019          McCLOSKEY, WARING, WAISMAN &
                                       DRURY LLP

11

12                                     By:__/s/ Sonia S. Waisman
                                           SONIA S. WAISMAN

13
                                       Attorneys for Plaintiffs
14                                     **THE STANDARD FIRE INSURANCE
                                       COMPANY and TRAVELERS
15                                     CASUALTY AND SURETY COMPANY**

16  Dated:  December 30, 2019          DUANE MORRIS LLP

17

18                                     By:__/s/ William J. Baron
                                           WILLIAM J. BARON

19
                                       Attorneys for Plaintiff
20                                     **GREAT AMERICAN INSURANCE
                                       COMPANY OF NEW YORK, formerly
21                                     known as American National Fire
                                       Insurance Company**

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF

1   Dated:  December 30, 2019          AIWASIAN & ASSOCIATES

2                                      By: _/s/ John Conway_
                                           JOHN CONWAY

3                                       Attorneys for Plaintiffs
4                                      **VIGILANT INSURANCE COMPANY;
                                       and CENTURY INDEMNITY**
5                                      **COMPANY (as successor to CCI
                                       Insurance Company, as successor to**
6                                      **Insurance Company of North America),
                                       PACIFIC EMPLOYERS INSURANCE**
7                                      **COMPANY, and FEDERAL
                                       INSURANCE COMPANY**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    COMPLAINT FOR DECLARATORY RELIEF

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4   Dated:  December 30, 2019      McCLOSKEY, WARING, WAISMAN & DRURY LLP

5

6                                By:  */s/ Sonia S. Waisman*
                                    SONIA S. WAISMAN

7

                               Attorneys for Plaintiffs
8                               **THE STANDARD FIRE INSURANCE COMPANY and TRAVELERS**
9                               **CASUALTY AND SURETY COMPANY**

10  Dated:  December 30, 2019      DUANE MORRIS LLP

11

                                  By:  */s/ William J. Baron*
12                                      WILLIAM J. BARON

13                               Attorneys for Plaintiff
14                               **GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, formerly**
15                               **known as American National Fire Insurance Company**

16

17  Dated:  December 30, 2019      AIWASIAN & ASSOCIATES

18                                By:  */s/ John Conway*
                                      JOHN CONWAY

19

                               Attorneys for Plaintiffs
20                               **VIGILANT INSURANCE COMPANY; and CENTURY INDEMNITY**
21                               **COMPANY (as successor to CCI Insurance Company, as successor to**
22                               **Insurance Company of North America), PACIFIC EMPLOYERS INSURANCE**
23                               **COMPANY, and FEDERAL INSURANCE COMPANY**

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF